**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
JEAN PERRENOD MAMAKOS,

                              Plaintiff,

                                                           **REPORT AND**
            - against -                                    **RECOMMENDATION**

UNITED AIRLINES, INC.,                        CV 14-7294 (SJF) (AKT)

                              Defendant.
----------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.      PRELIMINARY STATEMENT**

      Plaintiff Jean Mamakos ("Plaintiff") commenced this action against Defendant United

Airlines, Inc. ("Defendant" or "United Airlines" or "United") after United Airlines ejected

Plaintiff from one of its flights.  *See* Second Amended Complaint ("SAC") [DE 75].  Plaintiff

alleges that she was "forcibly and wrongly removed" from Defendant's plane, publicly arrested,

and held in jail for three days.  *See generally id.*  Plaintiff seeks to hold United Airlines liable for

damages she sustained under different theories of negligence, negligent infliction of emotional

distress, and breach of contract.  *Id.* ¶¶ 90-197.

      United Airlines now moves for summary judgment against all of Plaintiff's causes of

action set forth in the Second Amended Complaint.  On December 2, 2019, Judge Feuerstein

referred United Airlines' motion to this Court for a Report and Recommendation as to whether

the motion should be granted.  December 2, 2019 Electronic Order.  For the reasons set forth

below, the Court respectfully recommends to Judge Feuerstein that United Airlines' motion for

summary judgment be GRANTED.

II.    <u>BACKGROUND</u>

A.    **Deficiencies in Plaintiff's Opposition**

At the outset, the Court points out several issues concerning the form and substance of

Plaintiff's papers filed in opposition to Defendant's motion.  In its totality, Local Rule 56.1 states

as follows:

> (a) Upon any motion for summary judgment pursuant to Rule 56 of
> the Federal Rules of Civil Procedure, there shall be annexed to the
> notice of motion a separate, short and concise statement, in
> numbered paragraphs, of the material facts as to which the moving
> party contends there is no genuine issue to be tried. Failure to
> submit such a statement may constitute grounds for denial of the
> motion.
>
> (b) The papers opposing a motion for summary judgment shall
> include a correspondingly numbered paragraph responding to each
> numbered paragraph in the statement of the moving party, and if
> necessary, additional paragraphs containing a separate, short and
> concise statement of additional material facts as to which it is
> contended that there exists a genuine issue to be tried.
>
> (c) Each numbered paragraph in the statement of material facts set
> forth in the statement required to be served by the moving party
> will be deemed to be admitted for purposes of the motion unless
> specifically controverted by a correspondingly numbered
> paragraph in the statement required to be served by the opposing
> party.
>
> (d) Each statement by the movant or opponent pursuant to Rule
> 56.1(a) and (b), including each statement controverting any
> statement of material fact, must be followed by citation to evidence
> which would be admissible, set forth as required by Fed. R. Civ. P.
> 56(c).

Local Civil Rule 56.1(a)-(d).

On many occasions in which Plaintiff "disputes" or even "agrees" with the asserted

statements of undisputed facts in United Airlines' Local Rule 56.1 Statement, Plaintiff's

responses set forth lengthy recitations of Plaintiff's version of the events described in Plaintiff's

pleading and contain information that is irrelevant to the facts proffered by United Airlines. Much of the information contained in Plaintiff's statements could/should have been added *after* Plaintiff concluded the responses to each of United Airlines' paragraphs. *See* Rule 56.1(b). Moreover, many of Plaintiff's responses do not include citations to evidence in the record and do not specifically controvert United Airlines' statements. *See* Rule 56.1(d). The failure of Plaintiffs' counsel to comply with Rule 56.1 is problematic considering "the purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, and 'to assist the court in determining which facts are genuinely undisputed.'" *NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, No. 07 CIV. 3378, 2007 WL 4233008, at *1 (S.D.N.Y. Nov. 30, 2007) (quoting *Madison Maidens, Inc. v. Am. Mfrs. Mut. Ins. Co.,* No. 05 Civ. 4584, 2006 WL 1650689, at *2 (S.D.N.Y. June 15, 2006)). Plaintiff's failures are particularly troubling where, as here, Judge Feuerstein struck Plaintiff's initial opposition papers because they did not comply with Local Rule 56.1. *See* November 5, 2019 Electronic Order.

Local Civil Rule 56.1(c) is clear that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party *will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party*." (emphasis added). There is no ambiguity in this provision. "Where the opposing party fails to provide a separate statement containing factual assertions, the Court is free to disregard any assertions made by the opposing party." *Myers v. Lennar Corp.*, No. 08-CV-2799, 2010 WL 5491112, at *1 n.1 (E.D.N.Y. Dec. 30, 2010) (citing *Watt v. New York Botanical Garden*, No. 98 Civ. 1095, 2000 WL 193626, at *1 n.1 (S.D.N.Y. Feb. 16, 2000)).

As a result of Plaintiff's failures, the Court conducted its own independent review of the record, the parties' Rule 56.1 Statements, and the exhibits which each side submitted. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (holding that a district court may "opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file . . . a statement [of facts]") (quoting *Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 292 (2d Cir. 2000)).  In addition to the undisputed facts asserted by United Airlines, the Court recites any additional facts in the underlying record which are material and undisputed.  Whether reciting the undisputed facts as stated by Defendant or those culled from its own independent review of the record, the Court construes the facts in the light most favorable to the Plaintiff as the non-moving party. *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir. 2007); *Capobianco v. New York*, 422 F.3d 47, 50 (2d Cir. 2001); *Coastal Pipeline Prod. of New York v. Gonzales*, No. 04 CIV. 8252, 2006 WL 473883, at *4 (S.D.N.Y. Feb. 28, 2006).

### B.    Material Facts

#### 1.    *Plaintiff's Ski Trip to Alaska*

Plaintiff was a member of the Danbury Ski Club.  Defendant's Statement of Material Facts ("Def.'s SOMF") [DE 110-1] at ¶ 19.  Over a period of six months preceding March 2013, Plaintiff made a series of payments totaling $2,500 to the Danbury Ski Club for a ski trip to Alaska.  Def.'s SOMF ¶ 42; *see* Jean Perrenod Mamakos Deposition Transcript ("Mamakos Tr.") [DE 110-5] at 17.  Plaintiff did not make any payments to United Airlines directly.  Def.'s SOMF ¶ 44; *see* Mamakos Tr. at 16.  A third entity, "American Sport," was involved with the Danbury Ski Club in scheduling Plaintiff's trip.  Def.'s SOMF ¶ 43.  Plaintiff did not know whether the Danbury Ski Club or American Sport ultimately paid United Airlines for her plane

tickets.  *Id.* ¶ 44.  However, it was American Sport that provided Plaintiff with "E-tickets" for her flights.  *Id.* ¶ 43.

Plaintiff began a three-legged trip to Alaska on March 1, 2013 from LaGuardia Airport in New York.  *Id.* ¶ 20.  She flew from New York to Houston, Texas and arrived around 3:30 p.m. *Id.*  From Houston, Plaintiff flew to Seattle, Washington and arrived around 7:30 p.m.  *Id.* ¶¶ 20-21.  After arriving in Seattle, Plaintiff was told to deplane because a new flight crew was coming aboard and the aircraft needed to be cleaned.  *Id.* ¶ 21.  After deplaning, Plaintiff purchased various snacks in the airport before returning to the aircraft one hour later to fly to Anchorage, Alaska.  *Id.* ¶¶ 21-22.

As Plaintiff reboarded the plane, she observed three flight attendants who appeared to be busy.  *Id.* ¶ 23.  These were not the same flight attendants who were on Plaintiff's previous flights.  *Id.* ¶ 24.  Plaintiff then proceeded to sit in her assigned seat in Economy Class, 27D. *Id.* ¶ 23.  Fifteen minutes later, Plaintiff heard an announcement that the cabin doors were being closed.  *Id.* at ¶ 25.  The flight crew then provided the passengers with safety instructions and told them to remain in their seats.  *Id.*

### 2.    *The Removal of Plaintiff from United Airlines' Aircraft*

After safety instructions were given, Plaintiff noticed there were empty seats in the plane. *Id.* ¶ 26.  She undid her seat belt, stood up, and attempted to sit in a row that was behind her assigned seat.  *Id.*  Plaintiff was stopped by an African-American female flight attendant who advised her that an additional 60 passengers would be boarding the plane.  *Id.* ¶ 27; Mamakos Tr. at 72.  A Caucasian female flight attendant overheard this exchange and stated that the number of new passengers was actually 50.  Def.'s SOMF ¶ 27; *see* Mamakos Tr. at 75.  Plaintiff then returned to her assigned seat at 27D.  Def.'s SOMF ¶ 27.  The pilot, Captain Jeffries, was

notified of Plaintiff's attempt to change her seat. *Id.* ¶¶ 50-51. A flight attendant called him on either the telephone or intercom and apprised him of a problem with a passenger. *Id.* ¶ 51. Captain Jeffries was told a passenger moved her seat from Economy to EconomyPlus and that the passenger was advised an additional fare is required for this change. *Id.* ¶ 52. Captain Jeffries thought the situation had resolved itself as the passenger moved back to her assigned seat. *Id.* ¶ 53.

Fifteen or 20 minutes later, the cabin doors re-opened for new passengers to board the plane. *Id.* at ¶ 28. Plaintiff counted each of these passengers to determine if there would be any empty seats. *Id.* In total, she counted 22. *Id.* After the cabin doors closed for a second time, Plaintiff began to look for a different seat so she "could get more room." *Id.* ¶ 30; *see* Mamakos Tr. at 81. She did not want to move to a row that was behind her because a flight attendant previously yelled at her. Def.'s SOMF ¶ 30. Plaintiff noticed empty seats in either row 20 or 21 which were near the wings of the aircraft. *Id.* ¶ 31. Plaintiff asked a man who was sitting in a window seat whether the aisle seat was occupied. *Id.* The man said the aisle seat was unoccupied, so Plaintiff sat down in that aisle seat. *Id.*

A third female flight attendant then approached Plaintiff and advised her that she needed to pay a fee to sit in this aisle seat. *Id.* ¶ 32. Plaintiff told the flight attendant "I'm a registered nurse and usually this seat is to help somebody if there is an emergency and I help people if there is an emergency." *Id.*; Mamakos Tr. at 88. The flight attendant walked away and came back with a clipboard. Def.'s SOMF ¶¶ 32-33. Plaintiff then asked what the fee to sit in this new seat was and the flight attendant advised her the cost was $109. *Id.* ¶ 33. Plaintiff told the flight attendant that she would not pay this fee and that she would return to her seat. *Id.*

Captain Jeffries received a call from a flight attendant which apprised him that Plaintiff sat in an EconomyPlus seat for a second time, would not pay the additional fare for this new seat, and would not return to her assigned seat. *Id.* ¶ 54. Captain Jeffries was told that the passenger was acting belligerent and was verbally abusive to the flight attendants who approached her to resolve the issue. *Id.* ¶ 55. Captain Jeffries was also told the passenger was uncooperative and non-compliant, and that the flight attendants were concerned the passenger would be a problem on the flight. *Id.* Captain Jeffries relied on the information provided to him by the flight attendants, found that Plaintiff was unwilling to comply with flight crew instructions, and concluded Plaintiff was a safety threat. *Id.* ¶ 57.[1] At the time Captain Jeffries made the decision to have Plaintiff removed from the plane, it was his understanding that she was not in her assigned seat. *Id.* ¶ 56.

Plaintiff ultimately returned to her assigned seat and after she did so, she heard Captain Jeffries announce over the loudspeaker that "[t]here is a person on this plane who wants to get off and doesn't want to fly to Alaska." *Id.* ¶ 34 (quoting Mamakos Tr. at 90). Plaintiff heard Captain Jeffries make this announcement four or five times over a five-minute period.[2] *Id.*

---

[1]    Plaintiff attempts to dispute this fact by stating: "Captain Jeffries testified that at no time did the Plaintiff's actions rise to any threat or safety level as outlined within the United Airlines Customer Service Manual[.] [H]is answers were evasive as to whether the Plaintiff met any of the threat levels outlined in the United Customer Service Manual." Pl.'s SOF ¶ 40 (citing Jeffries Tr. at 200). Plaintiff's characterization of this portion of Captain Jeffries' testimony is inaccurate. Captain Jeffries testified that if he had to assign a threat level to Plaintiff's behavior, it would be a "a level one or less." *See* Jeffries Tr. at 200.

[2]    United Airlines characterizes Captain Jeffries' testimony as stating that he made a single announcement that Plaintiff did not want to continue to Alaska. Def.'s SOMF ¶ 58 (citing Jeffries Tr. at 186-87). Plaintiff disputes this, citing her deposition testimony which states that Captain Jeffries made this announcement four or five times. Pl.'s SOF ¶ 40 (citing Mamakos Tr. at 92). Whether this announcement was made once or five times is not a material fact that the Court needs to reconcile for purposes of this motion.

Plaintiff did not know that these announcements pertained to her.  *Id.*  Once Captain Jeffries' decision to have Plaintiff ejected was relayed to "Operations," Operations contacted the police who arrived approximately 30 to 45 minutes later.  *Id.* ¶ 59 (citing Deposition Transcript of Captain John Jeffries ("Jeffries Tr.") [DE 110-6] at 170-71).

Two men in regular clothes boarded the plane and went to Plaintiff's seat.  *Id.* ¶ 35.  These men told Plaintiff she needed to leave the plane and that they would find another plane for her.  *Id.*  Plaintiff responded by stating that she was with a group of people in the Danbury Ski Club, paid for her seat, and wanted to go to Alaska.  *Id.*  The men told Plaintiff that she needed to disembark for a second time.  *See id.*  Plaintiff was then approached by a United Airlines supervisor named Laura Tolen.  *Id.* ¶ 36.  Tolen told Plaintiff that the Captain wanted her to get off the plane.  *Id.*; Mamakos Tr. at 95; *see also* Laura Tolen Accident Incident Report ("Tolen Incident Report") [DE 115-4] at 1 ("Capt. Jeffries . . . asked to have [Plaintiff] and her bag removed.").  Tolen then went to speak with the Captain before returning to Plaintiff.  Def.'s SOMF ¶ 37.  Tolen told Plaintiff that the Captain insisted she disembark.  *Id.*  Plaintiff reiterated her prior plea that she did not want to leave the plane because she paid for her ticket and wanted to travel to Alaska with her group.  *Id.*  Tolen told Plaintiff that if she did not comply, the police would be called.  *Id.* ¶ 38.  Plaintiff again stated that she paid for her seat and needed to travel with the group.  *Id.*

Approximately five minutes later, three police officers boarded the plane.  *Id.* ¶ 39.  These officers asked Plaintiff to get off of the plane and if she did not do so, the police would take her off.  *Id.*  Plaintiff replied by stating she needed to be on the flight as she paid for her seat and wanted to go to Alaska with her group.  *Id.*  Police told Plaintiff that if she refused to depart the plane, they would forcibly remove her.  Mamakos Tr. at 104-05.  Plaintiff made the

8

conscious decision not to comply with the officers' instructions. *Id.* at 105; Def.'s SOMF ¶¶ 40-41; Plaintiff's Rule 56.1 Statement of Facts ("Pl.'s SOF") [DE 118-1] at ¶ 22. An altercation then ensued. Plaintiff was physically carried off of the plane by police officers. Mamakos Tr. at 102. Her pants were ripped and she suffered abrasions to her knees and elbows. *Id.* at 103. Plaintiff could not recall that a single United Airlines employee made physical contact with her as she was being removed from the plane. Def.'s SOMF ¶ 40; Mamakos Tr. at 102-03.

After being ejected from the plane, Plaintiff was arrested for criminal trespass and resisting arrest. Def.'s SOMF ¶ 41. Plaintiff was transported to a correctional facility later in the evening on March 1, 2013 or in the early morning of March 2. Pl.'s SOF ¶ 23; *see* Mamakos Tr. at 110-16. She remained there until March 4. Mamakos Tr. at 114-16. Early in the day on March 4, Plaintiff was transported from the correctional facility to a courthouse for her arraignment. *Id.* at 114-15. She appeared with a public defender and could not recall entering a plea. *See id.* at 115-16. She was released from the correctional facility that same evening and directed to return to court on March 6. *Id.* at 116.

### 3. *United Airlines' Contract of Carriage*

Rule 21 of United Airlines' Contract of Carriage provides eight reasons under which United Airlines has the right to refuse to transport or the right to remove a passenger from an aircraft. United Air Lines, Inc. Contract of Carriage ("Contract of Carriage") [DE 110-7] at 19-20. Among these reasons are breach of contract of carriage, failure to pay the appropriate fare, and safety. *Id.* at 19. Under the "safety" heading, the Contract of Carriage recites a non-exhaustive list of 18 different scenarios in which a passenger may be removed for the safety of other passengers or members of the flight crew. *See id.* These circumstances include:

1) Passengers whose conduct is disorderly, offensive, abusive, or violent;

2) Passengers who fail to comply with or interfere with the duties of the members of the flight crew, federal regulations, or security directives;

3) Passengers who assault any employee of UA, including the gate agents and flight crew, or any UA Passenger;

4) Passengers who, through and as a result of their conduct, cause a disturbance such that the captain or a member of the cockpit crew must leave the cockpit in order to attend to the disturbance . . . .

*Id.* at 19.

Rule 27 of the Contract of Carriage pertains to refunds. *Id.* at 38. In pertinent part, this rule provides:

A) Ticket Refunds - Involuntary
    1) The amount UA will refund upon surrender of the unused portion of the Passenger's Ticket for reasons pursuant to Rule 21 . . . will be as follows:

. . . .

    b) If a portion of the Ticket has been used:
        (i) One-way fares – An amount equal to the lowest comparable one-way fare for the class of service paid, for the unflown segment.

*Id.*

### 4. *United Airlines' Refund of Plaintiff's Airfare*

Tolen testified that she "probably . . . gave the instruction to cancel" "what was remaining on [Plaintiff's] reservation." Deposition Transcript of Laura Tolen ("Tolen Tr.") [DE 110-8] at 113-14. Tolen stated that Plaintiff's ticket "concluded in Anchorage as far as United was concerned," so Plaintiff's flight from Seattle to Anchorage was cancelled. *Id.* at 113. Tolen gave an instruction to refund that portion of Plaintiff's ticket and confirmed the refund was issued. *Id.* at 112-14. However, Plaintiff testified that "United Airlines canceled all of [her] flights"—including her return trip from Alaska to JFK. *See* Mamakos Tr. at 122. Tolen was unaware of Plaintiff's return trip and was not involved with its cancellation. Tolen Tr. at 113-14.

10

Plaintiff claimed she did not receive a refund from either the Danbury Ski Club or American Sport and did not know if either of these entities received a refund from United Airlines.  Def.'s SOMF ¶¶ 44-45.  Plaintiff wrote a letter to "Mike" at American Sport asking for a refund as she never made it to Alaska.  *Id.* ¶ 46.  She could not remember if a response was made to  this request.  *Id.*

### C.   Relevant Procedural History

#### 1.   The Operative Complaint

Plaintiff asserted seven causes of action in her Second Amended Complaint which was filed on July 23, 2018.  *See generally* Second Amended Complaint ("SAC") [DE 75].  Three of these claims are rooted in general negligence.  First, Plaintiff asserts that United Airlines violated its duty of care as a common carrier by assigning a flight crew which was overworked and fatigued.  *Id.* ¶¶ 90-104.  Second, Plaintiff asserts that United Airlines breached its duty of care by failing to have policies and procedures in place to safeguard its passengers from wrongful arrest and to properly investigate incidents prior to directing the Port of Seattle Police to remove, arrest, and detain her for criminal trespass.  *Id.* ¶¶ 105-113.  Plaintiff's third cause of action is difficult to discern and essentially asserts multiple breaches of duty by United Airlines, including:  (1) the duty of care by negligently and inaccurately stating Plaintiff was disruptive, disorderly, and a danger to the aircraft, *id.* ¶¶ 114-19; (2) the duty of care in failing to adhere to its policies by orally demanding an additional fee from Plaintiff for changing her seat without providing a schedule for such a fee in writing prior to or after boarding the flight, *id.* ¶¶ 120-21; (3) the duty of care by attempting to extract fees from Plaintiff in exchange for not ejecting her from the flight, *id.* ¶¶ 122-24; (4) the duty of care in that the flight captain refused to speak to Plaintiff prior to directing that she be removed from the flight at issue, *id.* ¶¶ 125-26; and (5) the

duty of care by improperly calling the Port of Seattle Police and providing the Police with false information, *id.* ¶¶ 127-30.

Plaintiff's fourth and fifth causes of action are for gross negligence and willful and wanton negligence, respectively. Plaintiff bases both of these claims upon the conduct alleged in her first two causes of action. *See id.* ¶¶ 136-53. Count six is for negligent infliction of emotional distress. Because of the underlying incident, Plaintiff alleges she suffers from fear, anxiety, reluctance to engage in air travel, and insomnia. *Id.* ¶ 166. Plaintiff also complains of physical manifestations resulting from her emotional distress such as loss of appetite, insomnia, difficulty sleeping, and pain in her back, neck and leg which requires weekly massage therapy. *Id.* ¶ 167. For each of her six tort claims, Plaintiff requests punitive damages. Plaintiff's final claim for breach of contract is premised on United Airlines forcibly ejecting her from the plane, canceling her return trip without providing a refund, and failing to provide adequate notice of United Airlines' terms and conditions. *See id.* ¶¶ 170-89.

## 2.    *United Airlines' Summary Judgment Motion*

On October 11, 2019, United Airlines filed its motion for summary judgment. *See* Notice of Motion [DE 110]. United Airlines seeks dismissal of each of Plaintiff's seven claims for relief. Defendant United Airlines Inc.'s Memorandum of Law in Support of Summary Judgment ("Def.'s Mem.") [DE 110-2]. United Airlines submits that "[t]he question before the Court is not one of fact, but of the legal standard to be applied under the factual circumstances of this case." *Id.* at 2. It is United Airlines' position that Plaintiff's six tort claims should be dismissed because they are preempted by the Federal Aviation Act ("FAA"). *Id.* at 4. More specifically, United argues that the FAA and regulations promulgated by that agency preempt New York state law standards of care for negligence, and Captain Jeffries properly exercised his discretion to eject

Plaintiff from the United Airlines' aircraft. *See* Def.'s Mem. at 6-10.  As to Plaintiff's claim for breach of contract, United Airlines contends it exercised its contractual right to refuse to transport Plaintiff pursuant to Rule 21 of the Contract of Carriage and provided Plaintiff a refund for the unused portion of her airfare. *Id.* at 11-12.  Plaintiff filed opposition to United's motion on October 18, 2019.  DE 115.  However, United Airlines moved to strike this opposition because Plaintiff's brief did not comply with either the Court's page-limitations or  Local Rule 56.1.  DE 116.  On November 4, 2019, United Airlines submitted a reply to Plaintiff's opposition.  DE 117.  The next day, Judge Feuerstein granted United Airlines' motion to strike, directed Plaintiff to submit a revised opposition, and permitted United Airlines to submit a revised reply.  On November 20, 2019, Plaintiff filed her revised opposition with accompanying exhibits.  Plaintiff Jean Perrenod Mamakos Memorandum of Law in Opposition to Summary Judgment ("Pl.'s Opp'n") [DE 118-2].  On November 26, 2019, United Airlines submitted a revised reply brief which is substantially similar to its initial reply.  Defendant United Airlines, Inc.'s Memorandum of Law in Reply ("Def.'s Reply") [DE 119].

## III.   STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 108 (2d Cir. 2013); *Holcomb v. Iona Coll.*, 521 F. 3d 130, 137 (2d Cir. 2008).  To determine whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising from that evidence in the light most favorable to

13

the non-moving party. *Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir. 2007); *Woodman v. WWOR-TV, Inc.*, 411 F. 3d 69, 75 (2d Cir. 2005). In dispatching this task, a court need only consider admissible evidence. *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997); *Hilaire*, 54 F. Supp. 3d at 251.

Where the movant shows a *prima facie* entitlement to summary judgment, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006); *Miller v. Nassau Health Care Corp.*, No. 09-CV-5128, 2012 WL 2847565, at *3 (E.D.N.Y. July 11, 2012). "[T]he nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment." *Salahuddin*, 467 F. 3d at 273; *see McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001) ("Even where facts are disputed, in order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor."). Summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Dobbs v. Dobbs*, No. 06-CV-6104, 2008 WL 3843528, at *5 (S.D.N.Y. Aug. 14, 2008) ("The Court's goal should be to isolate and dispose of factually unsupported claims.") (internal quotation marks omitted).

## IV.    <u>APPLICABLE LAW</u>

"Untangling the issues in this case begins with a determination as to the existence and extent of preemption of state and common law in relation to the applicable safety standards." *Crout v. Haverfield Int'l, Inc.*, 269 F. Supp. 3d 90, 94-95 (W.D.N.Y. 2017).  Accordingly, the Court will discuss general principles of preemption doctrine and how they relate to the Federal Aviation Act before turning to the merits of United Airlines' motion.

### A.       Preemption Doctrine

"The preemption doctrine is rooted in the Supremacy Clause of the Constitution." *Spinrad v. Comair, Inc.*, 825 F. Supp. 2d 397, 403 (E.D.N.Y. 2011) (quoting *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 313 (2d Cir. 2005)).  The Supremacy Clause provides that "the laws of the United States . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."  U.S. CONST. art. VI, cl. 2.  This Clause "invalidates state laws that 'interfere with, or are contrary to,' federal law."  *Spinrad*, 825 F. Supp. 2d at 403 (quoting *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985)).

"A federal agency may preempt state regulation and hence render unenforceable state or local laws that are otherwise not inconsistent with federal law provided the agency is acting within the scope of its congressionally delegated authority."  *City of New York v. Permanent Mission of India to the United Nations*, 618 F.3d 172, 187 (2d Cir. 2010) (internal quotation marks omitted).  "Federal regulations have no less preemptive effect than federal statutes."  *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).  "There is typically a presumption against preemption in areas of regulation that are traditionally allocated to states are of particular local concern."  *Id.* at 314.  "However, this 'presumption against federal preemption

disappears . . . in fields of regulation that have been substantially occupied by federal authority for an extended period of time." *Torres v. Midland Credit Mgmt.*, No. 17-cv-2794, 2018 WL 2304771, at *5 (E.D.N.Y. May 21, 2018) (quoting *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 314 (2d Cir. 2005)).

Preemption generally occurs in three ways:  (1) "where Congress has expressly preempted state law;" (2) "where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law;" and (3) "where federal law conflicts with state law." *Wachovia*, 414 F.3d at 313.  These categories are not "rigidly distinct" since "field pre-emption may be understood as a species of conflict pre-emption:  A state law that falls within a pre-empted field conflicts with Congress' intent (either express or plainly implied) to exclude state regulation." *Torres*, 2018 WL 2304771, at *5; *Spinrad*, 825 F. Supp. 2d at 404.

### B.    The Federal Aviation Act

"The United States Government has exclusive sovereignty of airspace of the United States."  49 U.S.C. § 40101(a)(1).  "The FAA was enacted to create a 'uniform and exclusive system of federal regulation' in the field of air safety."  *Air Trans. Ass'n of Am. V. Cuomo*, 520 F.3d 218, 224 (2d Cir. 2008).  "[T]he FAA 'was passed by Congress for the purpose of centralizing in a single authority—indeed, in one administrator—the power to frame rules for the safe and efficient use of the nation's airspace.'"  *Id.* (citing *Air Line Pilots Ass'n, Int'l v. Quesada*, 275 F.2d 892, 894 (2d Cir. 1960)).  "The Second Circuit has held that 'Congress intended to occupy the *entire field* of air safety."  *Crout*, 269 F. Supp. 3d at 95 (citing *Goodspeed Airport LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 210 (2d Cir. 2011)) (emphasis in original).  "Thus, the law of this Circuit is that field preemption applies in the area of air safety."  *Id.* (citing *Goodspeed*, 634 F.3d at 210).  The Second Circuit has also

16

"acknowledged that the FAA does not preempt all state law tort actions." *Spinrad*, 825 F. Supp. 2d at 406 (citing *Goodspeed*, 634 F.3d at 211). Section 40120(c) of the FAA is often referred to as the statute's "savings clause." *See* 49 U.S.C. § 40120(c) ("A remedy under this part is in addition to any other remedies provided by law."); *see Spinrad*, 825 F. Supp. 2d at 406 (noting that the FAA's savings clause preserves state law tort actions).

## V.   DISCUSSION

### A.   Plaintiff's Negligence Claims

Plaintiff asserted six claims against United Airlines rooted in different theories of negligence. Plaintiff's first three causes of action are for negligence. The fourth cause of action is based upon gross negligence, the fifth is premised upon gross negligence, and the sixth is asserted for negligent infliction of emotional distress.

### 1.   *Elements of Plaintiff's Negligence Claims Under New York Law*

To establish a negligence claim under New York law, a plaintiff must demonstrate: (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; and (3) plaintiff's injury was substantially caused by that breach. *Cheeseboro v. Little Richie Buss Service, Inc.*, 254 F. Supp. 3d 485, 490 (E.D.N.Y. 2017) (citing *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002)). The elements of a negligent infliction of emotional distress claim are a "breach of a duty owed to [the] plaintiff which exposes him or her to an unreasonable risk of bodily injury or death." *Calicchio v. Sachem Cent. Sch. Dist.*, 185 F. Supp. 3d 303, 314 (E.D.N.Y. 2016) (quoting *Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 293 (E.D.N.Y.2010)).

Gross negligence is used interchangeably with willful negligence. *Sanchez v. Ehrlich*, No. 16-CV-8677, 2018 WL 2084147, at *7 (S.D.N.Y. Mar. 29, 2018) (quoting *Colnaghi, U.S.A.,*

*Inc. v. Jewelers Protection Services, Ltd.*, 81 N.Y.2d 821, 823-24, 595 N.Y.S.2d 381, 383 (1993)) (footnote omitted); *Charter Oak Fire Ins. Co. v. Trio Realty Co.*, No. 99 CIV. 10827, 2002 WL 123506, at *4 (S.D.N.Y. Jan. 31, 2002).  To establish gross negligence, in addition to establishing the elements of a general negligence claim, a plaintiff must also prove "conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 391 (E.D.N.Y. 2018) (quoting *Purchase Partners, LLC v. Carver Fed. Sav. Bank*, 914 F. Supp. 2d 480, 497 (S.D.N.Y. 2012)). Punitive damages are recoverable in a negligence action only where the conduct in question evidences "a high degree of moral culpability" or "the conduct is so flagrant as to transcend mere carelessness" and "constitutes willful or wanton negligence or recklessness."  *Kraycar v. Monahan*, 49 A.D.3d 507, 508, 856 N.Y.S.2d 123, 124 (2008).

### 2.    *The Parties' Positions*

United Airlines contends that state law tort claims related to a passenger's removal from an aircraft are impliedly preempted by § 44902(b) of the FAA.  Section 44902(b) permits "an air carrier . . . to refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety."  49 U.S.C. § 44902(b).  United Airlines argues that its decision to eject Plaintiff from its flight cannot give rise to a claim for damages unless United Airlines' decision was arbitrary and capricious.  *See* Def.'s Mem. at 7.  As such, United Airlines maintains it is entitled to summary judgment on Plaintiff's tort claims because Captain Jeffries' decision to remove Plaintiff from the flight was not arbitrary and capricious because he properly relied on information from flight attendants to make his determination.  *Id.* at 9-10.  Specifically, Captain Jeffries was advised that the flight attendants were concerned about Plaintiff's behavior because Plaintiff was uncooperative, non-compliant, and refused to follow instructions.  *See id.* at 10.

In response, Plaintiff argues that she was not removed from the flight due to safety concerns, but due to "anger, spite, personality differences, fatigue, tiredness, and the Captain's stated intention to refuse" to fly the plane. Pl.'s Opp'n at 12. Plaintiff claims that she was cooperative and peaceful at all times. *Id.* at 13-14. In addition, Plaintiff submits that Captain Jeffries was provided with false information that Plaintiff refused to return to her assigned seat, and even after he was made aware that she eventually moved back to her assigned seat, Captain Jeffries still insisted Plaintiff be removed from the plane. *See id.* at 13-16. Plaintiff then argues that her negligence claims are not preempted under the Airline Deregulation Act ("ADA"). In support of this argument, Plaintiff relies on a July 5, 2018 decision by Judge Bianco[3] in this action which held that Plaintiff's negligence claims were not preempted under the ADA. *See* DE 71; 72; *see also* Transcript of July 5, 2018 Oral Ruling ("July 2018 Ruling Tr.") [DE 73]. Plaintiff then appears to concede that the FAA preempts the standards of care for air safety "but preserves state and territorial damage remedies." *Id.* at 19-20.[4]

In its reply, United Airlines reiterates its arguments that the FAA preempts state law standards of care and that Captain Jeffries' decision was not arbitrary or capricious. *See* Def.'s

---

[3]    This case was reassigned from Judge Bianco to Judge Feuerstein on May 31, 2019.

[4]    Plaintiff also asserts a claim for sanctions based upon United Airlines' production of a flight incident report the day prior to Captain Jeffries' deposition in September 2019. Plaintiff submits that this report was untimely provided several years after the instant litigation commenced and contains false information to justify United Airlines' actions. Pl.'s Opp'n at 4. However, the veracity of this report is not at issue here and this document is not relied upon by United Airlines in support of its summary judgment motion. Moreover, discovery ended nearly one year ago and if Plaintiff sought to pursue any sort of remedy pursuant to Rule 37 based upon United Airlines' alleged failure to produce this report, such a request is not only untimely, but also procedurally improper as it is raised for the first time in several sentences in an opposition brief.

Reply at 3-8.  United Airlines then submits that even if the Captain's decision was mistaken, it is

still protected under the broad arbitrary and capricious standard.  *Id.* at 10-14 (citing *Christel v.

AMR Corp.*, 222 F. Supp. 2d 335 (E.D.N.Y. 2002)).  Responding to Plaintiff's arguments

concerning Judge Bianco's July 2018 decision, United points out that Judge Bianco analyzed

Plaintiff's Second Amended Complaint under the liberal standard set forth in Rule 15(a)(2) and

accepted her allegations as true for purposes of his decision in analyzing a motion to amend the

complaint.  *See id.* at 15-17.  United Airlines also interprets Plaintiff's opposition as contending

that United is barred from re-raising arguments it advanced in opposition to Plaintiff's motion to

amend.  *See id.* at 16-17.

### 3.    *Analysis*

#### a.    **ADA Preemption**

Plaintiff has raised arguments that her negligence claims are not preempted under the

Airline Deregulation Act based upon Judge Bianco's July 2018 decision on her motion to amend.

*See* Pl.'s Opp'n at 17-19 (citing July 2018 Ruling Tr.).  Section 41713 of the ADA provides that

a state "may not enact or enforce a law, regulation or other provision having the force and effect

of law related to a price, route, or service of an air carrier that may provide air transportation."

*Peterson v. Cont'l Airlines, Inc.*, 970 F. Supp. 246, 249 (S.D.N.Y. 1997) (quoting 49 U.S.C.

§ 41713(b)(1)).  *Rombom v. United Airlines, Inc.*, a decision by then-District Judge Sonia

Sotomayor, established a tri-partite framework for determining whether state law claims against

an airline are preempted under § 41713.  *Rombom v. United Airlines, Inc.* 875 F. Supp. 214, 221-

22 (S.D.N.Y. 1994).  This inquiry focuses on "whether the activity at issue is an airline *service*"

under § 41713.  *See Peterson*, 970 F. Supp. at 250 (citing *Rombom*, 875 F. Supp. at 221)

(emphasis added).  Thus, under *Rombom*, a court "must first determine whether "the activity at

issue in the claim is an airline service." *Rombom*, 875 F. Supp. at 221.  If it is a service, then the court must decide whether the claim affects the airline service "directly or tenuously, remotely or peripherally." *Id.* at 222.  Lastly, a court must decide whether "the underlying tortious conduct was reasonably necessary to the provision of the service." *Id.*  "[I]f the tortious act did not occur during the service . . . or . . . did not further the provision of the service in a reasonable manner, then the state tort claim should continue." *Id.*

Utilizing this framework, Judge Bianco found that Plaintiff's claims were not preempted under the second and third *Rombom* factors.  July 2018 Ruling Tr. at 13-14.  In so holding, Judge Bianco determined that Plaintiff alleged United Airlines had abused its authority by removing her since she was peacefully sitting in her seat and acting compliant when she was ejected. *Id.* at 14.  Judge Bianco also relied on Plaintiff's allegations that the captain had Plaintiff removed because he was tired and did not want to fly to Alaska.  *Id.*  "[I]f proven, [an apparent attempt to avoid flying to Alaska] would constitute outrageous conduct that goes beyond the scope of normal aircraft operations." *Id.*

Plaintiff appears to have misinterpreted United Airlines' motion on this issue.  United is not moving for summary judgment against Plaintiff's negligence claims based on ADA preemption.  Rather, United Airlines is moving for summary judgment on these claims solely on the ground of FAA preemption.  *See* Def.'s Reply at 3 ("Defendant's motion for summary judgment is not even brought pursuant to the provisions of the ADA.").  Although the Court need not address Plaintiff's ADA argument on the merits since the ADA is not the grounds on which United seeks summary judgment -- and Plaintiff has not filed a cross-motion for summary judgment -- the Court conveys to Plaintiff that allegations of fact which are accepted as true for purposes of a motion to amend are not sufficient to carry her burden in opposing a motion for

summary judgment.  Plaintiff's bare assertions that "[t]hose allegations have been established through the Tolen [I]ncident [R]eport and the testimony of the deposition witnesses" are completely insufficient without proper citation to the record evidence.  *See* Pl.'s Opp'n at 18. Moreover, although United Airlines opposes any argument that claims it is precluded from raising issues of preemption, the Court does not interpret Plaintiff's opposition to request such relief.  Notably, even if Plaintiff's opposition could be construed as such, United Airlines is not barred from re-raising at summary judgment the arguments it advanced at the motion to amend stage.  The Court will now turn to the portion of United Airlines' motion regarding FAA preemption.

### b.    FAA Preemption

As mentioned above, the FAA permits an air carrier to refuse to transport a passenger if the carrier decides the passenger is inimical to safety.  *See* 49 U.S.C. § 44902(b).  The carrier's permissive refusal cannot give rise to a damages claim unless its decision was arbitrary and capricious.  *Schaeffer v. Cavallero*, 54 F. Supp. 2d 350, 351 (S.D.N.Y. 1999).  "The analysis of whether an airline has properly exercised its discretion to remove a passenger is based upon the facts and circumstances known to the decision-maker at the time he or she made the decision." *Christel*, 222 F. Supp. 2d at 340 (citing *Norman v. Trans World Airlines, Inc.*, No. 98 Civ. 7419, 2000 WL 1480367, at *3 (S.D.N.Y. Oct. 6, 2000)).  The decision is not to be tested by other facts later disclosed by hindsight.  *Norman*, 2000 WL 1480367, at *3.  "An airline's discretion to reject a passenger must be accepted if exercised in good faith and for a rational reason."  *Ruta*, 322 F. Supp. 2d at 397 (citing *Adamsons v. American Airlines, Inc.*, 58 N.Y.2d 42, 48, 457 N.Y.S.2d 771, 775, 444 N.E.2d 21 (1982)).  "This deference to the airline's judgment is understandable in light of the fact that the airline must often make such decisions in the spur of

the moment, shortly before the plane takes off, and therefore without the benefit of complete and accurate information." *Id.*

Here, Captain Jeffries decided to have Plaintiff removed from the plane based on information provided to him from flight attendants. Captain Jeffries was first told that there was a problem when Plaintiff sought to move her seat from Economy to EconomyPlus, but that the situation resolved itself. Then, Captain Jeffries received a second call from a flight attendant which advised him that the situation with Plaintiff worsened. Specifically, Captain Jeffries was told that Plaintiff attempted to change her seat for a second time, would not move back to her assigned seat, and would not pay the additional premium required to change her seat. Captain Jeffries was also advised that Plaintiff was uncooperative and non-compliant and that the flight attendants were concerned that Plaintiff would be a problem on the flight. After hearing this information, Captain Jeffries decided to eject Plaintiff from the aircraft because he determined Plaintiff to be a safety threat. Jeffries Tr. at 146.

Plaintiff disputes the truthfulness of the information provided to Captain Jeffries by the flight attendants and submits that Plaintiff was cooperative during the incident. *See* Pl.'s CSOF ¶¶ 37-38. Plaintiff refers not only to her own testimony, but to affidavits prepared by George Giering and Geraldine Giering, both of whom were members of Plaintiff's ski club and were passengers on the flight. George Giering Affidavit ("George Giering Aff.") [DE 118-9]; Geraldine Giering Affidavit ("Geraldine Gearing Aff.") [DE 118-10]. After Plaintiff attempted to change her seat for the second time, George Giering observed a flight attendant with a credit card machine speaking to Plaintiff and that Plaintiff "appeared polite," "never raised her voice," and "[i]mmediately after their conversation, returned to her assigned seat, and sat quietly." George Giering Aff. ¶¶ 13-14. Regarding this same event, Geraldine Giering saw two flight

attendants approach Plaintiff who "rudely and in a forceful manner shoved a credit card machine in [her] face and . . . demand[ed] she pay an upgrade for the seat." Geraldine Gieirng Aff. ¶¶ 14-15. Geraldine Giering then stated that Plaintiff declined to pay the fare, "was not rude or loud," and [a]lmost immediately after their conversation, . . . returned to her assigned seat, and sat quietly eating a salad she had brought onboard." *Id.* ¶¶ 16-17. Plaintiff also submits that Captain Jeffries refused to speak to Plaintiff directly and did not confirm the information provided to him by members of the flight crew. *See* Pl.'s Opp'n at 3.

Even if the situation between the flight attendants and Plaintiff was exaggerated when communicated to Captain Jeffries, Captain Jeffries was still entitled to rely upon the information provided to him and did not act arbitrarily in having Plaintiff ejected. *See Ruta*, 322 F. Supp. 2d at 398 ("The sincerity of the flight attendant's representations has no bearing on whether the captain's decision was arbitrary and capricious."); *Christel*, 222 F. Supp. 2d at 341 ("Even if the battle of egos escalated to [the flight attendant] making exaggerated or even false representations to the Captain, Captain Nelson did not have an obligation to leave the cockpit and investigate the truthfulness of [the flight attendant's] statements."); *Norman*, 2000 WL 1480367, at *3 (holding that the captain "was indeed entitled to rely upon [the flight attendant's] representations regarding any potential safety threat with" the passenger in ordering the passenger's removal). Moreover, the mere fact that Captain Jeffries did not speak to Plaintiff about the incident before ordering her removal is of no moment. "A captain of an airplane is entitled without further inquiry to rely upon a flight attendant's representations that a conflict with a passenger might distract the flight attendant from performing his or her safety-related duties." *Ruta*, 322 F. Supp. 2d at 397 (citing *Norman*, 2000 WL 1480367, at * 3).

Plaintiff also contends that Captain Jeffries disregarded the fact that Plaintiff ultimately returned to her assigned seat.  *See* Pl.'s Opp'n at 2.  Case law is clear that the Captain's decision is to be evaluated based on the information known to him at the time he made his decision—not information which came to light after the fact.  *Christel*, 222 F. Supp. 2d at 340; *Norman*, 2000 WL 1480367, at *3.  Captain Jeffries was questioned as to whether Plaintiff was in her assigned seat at the time he gave the order to remove her, and he replied she was not.  *See* Jeffries Tr. at 127.

Plaintiff then attempts to create issues of fact by arguing that she was not ejected for safety concerns, but because Captain Jeffries was fatigued and angry at his employer to the point where he did not want to fly the plane to Alaska.  Pl.'s Opp'n at 5-7.  In making this argument, Plaintiff principally relies upon the Tolen Incident Report.  After Plaintiff moved her seat for the second time and was asked to return to her assigned seat, the Tolen Incident Report states that "Capt. Jeffries did not care where she sat but wanted confirmation she would cooperate with crew member instruction."  Tolen Incident Report at 1.  Plaintiff refused to reply which "Capt. Jeffries found . . . unacceptable[,] . . . asked to have her an[d] her bag removed, . . . [and] asked for the police to be called."  *Id.*  The Tolen Incident Report then provides that someone spoke to Plaintiff and asked her "if she could commit to remaining in her seat and comply with crew instructions," to which Plaintiff responded "yes."  *Id.*  However, the Report continues by stating that Captain Jeffries found that "unacceptable" and asked that Plaintiff be removed.  *Id.*  Then, the Report notes that Captain Jeffries "explained that he was fatigued as the scheduling of his line was CLE-SEA-ANC and he never got any rest, he was extremely upset at the line[,] . . . and close to refusing the entire flight if the matter [involving Plaintiff] did not resolve quickly."  *Id.*

25

Although United Airlines does not address Plaintiff's arguments concerning Captain Jeffries' purported fatigue and lack of intent to fly to Alaska, Plaintiff undercuts her own argument by claiming that "the entire Tolen Incident Report, other than documenting that the Plaintiff had in fact been forcibly removed from the aircraft, was false." Pl.'s Opp'n at 9-10 ("Laura Tolen simply invented those statements out of whole cloth, and falsely put them in her report without reason or basis."). Plaintiff argues that the Tolen Report conflicts with Captain Jeffries' testimony because the Captain stated he did not tell anyone he was tired or fatigued, and that he was sufficiently rested to fly to Alaska. *Id.* at 9.

Courts have held that a captain's decision to refuse to transport a passenger was not arbitrary and capricious "where the record is devoid of any indication that [the captain's] decision . . . was 'retaliatory or malevolent.'" *See Christel*, 222 F. Supp. 2d at 340-341 (citing *Norman*, 2000 WL 1480367, at *3). The ultimate question now is whether Plaintiff has presented sufficient evidence which would permit a reasonable jury to infer that United Airlines' proffered reason of safety was not the motivating factor in Plaintiff's ejection—but that Captain Jeffries' fatigue and intent to refuse to fly the plane were.

In reviewing Captain Jeffries' testimony, he stated that he was "adequately rested to operate th[e] flight," "if [he] had been fatigued [he] wouldn't have shown up for the flight," and that he "did not tell any United personnel that [he] was fatigued." Jeffries Tr. at 168, 179-80. Although there appears to be conflict between the Tolen Incident Report and Captain Jeffries' testimony, Tolen's deposition testimony provides clarification. Despite the fact that Tolen used the term "fatigue" in her Incident Report, she testified that "a better word would have been irritated" because Captain Jeffries did not appear fatigued to her and seemed "fresh and ready to go" for the flight to Alaska. Tolen Tr. at 76. Tolen perceived Captain Jeffries as irritated only

26

because the situation involving Plaintiff was "unusual . . . and went on an abnormally long time"—at least 40 minutes. *Id.* at 72. Most of Plaintiff's assertions that Captain Jeffries was fatigued are not accompanied by record citations, but where they are, Plaintiff refers the Court to the Tolen Incident Report as evidentiary support. On one hand, Plaintiff claims that nearly the entire Report is false, but on the other hand, contends that the Report contains information which demonstrates Plaintiff's "arbitrary exclusion and removal from the aircraft [was] for reasons that had nothing whatsoever to do with aircraft or passenger safety, but as a sham to delay a flight the pilot was too tired to permissibly operate." *See* Pl.'s Opp'n at 9-10. The contradictory nature of Plaintiff's piecemeal reliance on the Tolen Incident Report is unavailing on the issue of Captain Jeffries' purported fatigue, especially where, as here, the testimony of Captain Jeffries and Tolen is consistent. Interestingly, it does not appear that any of the flight attendants or even a co-pilot --individuals who possibly could have shed light on Captain Jeffries' state of mind -- were deposed in this case.[5] As such, Plaintiff has provided information which is speculative at best to demonstrate that Captain Jeffries ejected Plaintiff from the aircraft for reasons other than passenger safety. *See Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d. Cir. 2019) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."). Accordingly, the Court recommends that United

---

[5]     Plaintiff expresses great dismay that the flight attendants were not deposed. *See* Pl.'s Opp'n at 5 ("The defendant's [sic] effectively ran out the clock on this matter and succeeded in preventing the plaintiff from deposing the flight attendant and Captain witnesses or obtaining further evidence of their perfidy regarding the plaintiff's forcible removal. They now seek to capitalize on their improper and unethical discovery circumvention through summary judgment."). The Court notes that the parties requested an extension of time to complete discovery in September 2019. *See* DE 96; 97. One basis for this motion was that Plaintiff sought to depose two flight attendants. DE 96 at 2; DE 97 at 2. However, Judge Feuerstein denied the request to extend discovery in light of the commencement of dispositive motion practice. *See* 10/15/19 Electronic Order.

Airlines' motion for summary judgment be GRANTED as to Plaintiff's first, second, third, fourth, fifth, and sixth causes of action.

### B. Breach of Contract of Carriage

The last claim for which United Airlines seeks summary judgment is Plaintiff's cause of action asserting that United breached its Contract of Carriage. *See* Def.'s Mem. at 11-12. In the Second Amended Complaint, the manner in which this claim has been alleged is convoluted. Notwithstanding that fact, the Court recognizes two grounds upon which Plaintiff bases this cause of action: (1) United Airlines cancelled Plaintiff's return trip without providing her a refund; and (2) Plaintiff did not receive adequate notice of United Airlines' terms and conditions of sale/Contract of Carriage. *See* SAC ¶¶ 170-97. United argues that it had the contractual right to refuse to transport Plaintiff pursuant to Rule 21 of the Contract of Carriage. *Id.* at 11-12. For that reason, United maintains that pursuant to Rule 27 of the Contract of Carriage, it "was only obligated to refund the unused portion of Plaintiff's fare, which it did." *Id.* at 12 (citing Tolen Tr. at 114). United then contends that "passengers are on constructive notice of the contract of carriage terms." *Id.* at 11. In her opposition, Plaintiff does not even address whether a refund was issued. *See* Pl.'s Opp'n at 23-24. Plaintiff solely argues that United Airlines did not provide her with notice of the Contract of Carriage in accordance with FAA regulations. *See id.* Plaintiff then asserts that because she was only provided with a boarding pass -- not a "ticket" -- she did not have notice of the Contract of Carriage pursuant to 14 C.F.R. § 235.5 and is not bound by it. *Id.*

### 1.    *Notice*

The United States Department of Transportation ("DOT") is charged with promulgating regulations aimed at interpreting the ADA and standardizing contracts of carriage.  *See Covino v. Spirit Airlines, Inc.*, 406 F. Supp. 3d 147, 151-52 (D. Mass. 2019) (first citing 49 U.S.C. § 40113; then citing 14 C.F.R. § 253.1).  "DOT regulations provide that an airline carrier may incorporate by reference in a ticket 'any term of the contract for providing interstate air transportation,' if proper notice is provided."  *Id.* at 152 (citing 14 C.F.R. §§ 253.4(a), 253.5(a)).  "The adequacy of notice turns on whether the incorporation by reference of important legal rights was 'reasonably communicate[d]' to the passenger."  *Id.* (quoting *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861, 864 (1st Cir. 1983)).

United Airlines argues that airline passengers are on constructive notice of the Contract of Carriage terms "and cannot escape its terms by claiming that they did not bother to read them."  *See* Def.'s Opp'n at 11.  In *Dennis v. Delta Air Lines*, one of the cases upon which United relies, the plaintiff booked a Delta Air Lines flight through the website Orbitz.com. *Dennis v. Delta Air Lines, Inc.*, No. 10-CV-973 DLI LB, 2011 WL 4543487, at *2 (E.D.N.Y. Sept. 29, 2011).  When the plaintiff purchased her ticket on Orbitz.com, she was provided with a link to Delta's "Notice of Incorporated Terms of Contract."  *Id.*  In addition, Delta had a copy of its "Domestic General Rules Tariff" available to passengers at the LaGuardia Airport which provided notice to passengers of the incorporated conditions of carriage.  *Id.*  The court in *Dennis* concluded that "by making a copy of the Rules available to passengers at LaGuardia Airport and providing notice to Plaintiff when she purchased her ticket on Orbitz.com, . . . [Delta] complied with federal regulations for incorporating terms into the contract of carriage."  *Id.*

29

Although courts have held that a passenger is considered to be on notice of conditions of carriage based on information that airlines have available at airports via check-in counters or even by virtue of the passenger's possession of an electronic ticket, United Airlines has not provided the Court with information that it has complied with 14 C.F.R. §§ 253.4 or 253.5. *See Dennis*, 2011 WL 4543487, at *2; *see also Hekmat v. U.S. Transportation Sec. Admin.*, 247 F. Supp. 3d 427, 434-35 (S.D.N.Y. 2017) (holding that passengers were bound by the terms of airline's contract of carriage, which was incorporated by reference into passengers' electronic tickets); *Reed v. Delta Airlines, Inc.*, No. 10 Civ. 1053, 2011 WL 1085338, at *3 (S.D.N.Y. 2011) ("Delta's International Conditions of Carriage were incorporated by reference in Delta's contract of carriage with the plaintiff, and are therefore enforceable as part of the contract.  In compliance with the requirements for incorporating terms into contracts of carriage under the Code of Federal Regulations, Delta made its International Conditions of Carriage available for public inspection at JFK Airport, and provided a 'ticket notice' at check-in counters to advise passengers of the existence of incorporated conditions of carriage and to notify passengers that they could request full copies of the conditions from Delta." (citations omitted)).  Plaintiff claims she was not provided with any sort of "ticket" which could have incorporated the Contract of Carriage terms. *See* Pl.'s Opp'n at 24.  However, the Court notes that Plaintiff submitted the itinerary and reservation numbers she received from the third-party entity that facilitated her ticket purchases, as well as her boarding passes. *See* Connecticut Ski Council Registration and Itinerary [DE 118-3]; Boarding Passes [DE 118-4].  Although the boarding passes have a clear marking on them which says "ETICKET," United Airlines does not supplement its notice arguments in its reply brief. *See generally* Def.'s Reply.

Notwithstanding the foregoing information, the Court is not convinced that a reasonable jury could find in Plaintiff's favor on this aspect of her claim. Plaintiff's memorandum of law does not suggest that United Airlines breached its Contract of Carriage by failing to provide her with a ticket. Rather, Plaintiff argues that she was not provided with the proper "notice" pursuant to 14 C.F.R. § 253.5, and consequently, is not bound by the Contract of Carriage. *See* Pl.'s Opp'n at 23-24. In essence, Plaintiff appears to assert a cause of action based upon a violation of this federal regulation -- not based on a breach of contract claim. Consequently, it is well-settled that such regulations "do not create a private right of action." *See Shrem v. Southwest Airlines Co.*, No. 15-cv-04567, 2016 WL 4170462, at *3 (N.D. Cal. Aug. 8, 2016); *see also Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 33 (1st Cir. 2007) ("Regulations alone cannot create private rights of action; the source of the right must be a statute . . . . [W]e hold that the consumer protection provisions of the ADA do not permit the imputation of a private right of action against an airline and that, therefore, the plaintiffs do not have an implied right of action under 14 C.F.R. § 253.4 or § 253.7."); *G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 902 (9th Cir. 1992) (holding there is no implied private right of action under the Federal Aviation Act). Accordingly, to the extent that Plaintiff attempts to assert a cause of action for lack of notice of the Contract of Carriage under existing regulations, the Court respectfully recommends to Judge Feuerstein that summary judgment be GRANTED.

### 2.    *Refund*

United Airlines also takes the position that it is entitled to summary judgment on Plaintiff's breach of contract claim because it issued a refund in accordance with its Contract of Carriage. Tolen testified that she gave the instruction to provide Plainitff with a refund for

Plaintiff's ticket from Seattle to Anchorage.  *See* Tolen Tr. at 113-14.  Moreover, Tolen

confirmed that "her reservation was refunded."  *Id.* at 112.

Plaintiff only addresses the prospect of a refund in several of her responses to

Defendant's statements of fact.  On two occasions, Plaintiff simply asserts, without any record

citations to the record, that she wrote to United Airlines to get a refund but received no response.

*See* Pl.'s CSOF ¶¶ 25, 27.  Plaintiff then asserts this same fact and cites "Mamakos Letter to

UA."  However, the Court was unable to find this letter attached to either of Plaintiff's

oppositions, including the one that was stricken by Judge Feuerstein.  *See id.* ¶ 28.  Lastly,

Plaintiff once again asserts, with no supporting evidence, that she never received a refund and

that United Airlines "produced no documentation showing [it] refunded any portion of her

airfare to anyone related to Plaintiff."  *Id.* ¶ 49.[6]

Plaintiff appears to turn her claim on its head by asserting a cause of action for breach of

contract, and then arguing that the contract which was allegedly breached does not apply to her.

Significantly, at no point in her memorandum of law does Plaintiff specifically contest United

Airlines' argument with respect to the issuance of a refund.  "Federal courts may deem a claim

abandoned when a party moves for summary judgment on one ground and the party opposing

summary judgment fails to address the argument in any way."  *Maher v. All. Mortg. Banking

Corp.*, 650 F. Supp. 2d 249, 267 (E.D.N.Y. 2009) (quoting *Taylor v. City of New York*, 269 F.

Supp. 2d 68, 75 (E.D.N.Y. 2003)); *see Sorto–Romero v. Delta Int'l Machinery*, No. 05-CV-5172,

---

[6]    During Plaintiff's deposition, she was presented with a document dated June 19, 2013 which showed a $284.60 adjustment to an American Express card ending in 50001. Mamakos Tr. at 28-30.  Plaintiff stated that she did not have an American Express card and did not know if either the Danbury Ski Club or American Sport used an American Express card to pay for her tickets.  *Id.* at 29-30.  However, this document was not provided to the Court by either side.

2007 WL 2816191, at *9 (E.D.N.Y. Sept. 24, 2007) (finding claim "abandoned by virtue of [plaintiff's] failure to address [it] in his memorandum responding to defendant['s] summary judgment motion"); *Dineen v. Stramka*, 228 F. Supp. 2d 447, 454 (S.D.N.Y. 2002) (finding that plaintiff's failure to address claims in opposition papers "enable[es] the Court to conclude that [plaintiff] has abandoned them"); *see also* Local Civ. Rule 7.1 (providing that "all oppositions . . . with respect to motions shall comply with Local Civil Rule 7.1(a)(2)," which requires motion papers to include "memorandum of law, setting forth the cases and other authorities relied upon in support of the motion").    Accordingly, Plaintiff's failure to properly respond to United Airlines' 56.1 Statement and failure to address United's arguments pertaining to the issuance of a refund in her memorandum of law constitute an abandonment of her breach of contract claim to the extent it seeks a refund.  As such, the Court recommends that summary judgment be GRANTED and Plaintiff's breach of the Contract of Carriage claim be dismissed in its entirety.

## VI.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Feuerstein that United Airlines' motion for summary judgment be GRANTED in accordance with this Report and Recommendation.

## VII.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Sandra J. Feuerstein.  Any requests for an**

**extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

<b>SO ORDERED.</b>

Dated: Central Islip, New York
      September 22, 2020

                /s/ A. Kathleen Tomlinson
                A. KATHLEEN TOMLINSON
                United States Magistrate Judge